UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 11-125-HRW-CJS**

**JOSEPH P. FANTUZZO**                                                                                           **PETITIONER**

**v.**                              **REPORT AND RECOMMENDATION**

**COOKIE CREWS, WARDEN,**
**KENTUCKY STATE REFORMATORY**                                                          **RESPONDENT**

\* \* \* \* \* \* \* \* \* \*

On September 1, 2011, Joseph P. Fantuzzo, *pro se,* filed in the United States District Court for the Western District of Kentucky a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1).[1] On November 28, 2011, the matter was transferred to this Court. (R. 4). On December 2, 2011, this Court ordered Respondent to respond only to Petitioner's argument for equitable tolling of the statute of limitations. (R. 8). On January 11, 2012, Respondent filed its Response on the issue (R. 15), to which Petitioner filed a Reply (R. 17). Having all relevant documents on the issue of the statute of limitations before the Court, and finding Petitioner is not

---

[1] Although the Clerk of Court for the Western District of Kentucky received and docketed the Petition on September 7, 2011, it is deemed filed on the date Petitioner deposited it in the institution's internal mailing system. Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. Here, the *pro se* petition was signed and mailed by Fantuzzo on September 1, 2011. (*See* R. 1-1, at 11). Applying the prisoner mailbox rule, the Court deems the habeas petition to have been filed on September 1, 2011. *Houston v. Lack*, 487 U.S. 266, 273 (1988); Rule 3(d) of Rules Governing Section 2254 Cases in the United States District Courts.

entitled to equitable tolling, it is herein recommended that Fantuzzo's Petition be **denied,** without requiring Respondent to further respond to Fantuzzo's claims.[2]

## I. ANALYSIS

### A. Applicable Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner has only one year in which to file a federal petition for writ of habeas corpus. *See* 28 U.S.C. § 2244(d). The AEDPA statute of limitations begins to run from the latest of four circumstances:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2]Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254 provides for a federal district court to conduct a preliminary review prior to serving a respondent with a copy of a petition and requiring a response. District courts are permitted to consider *sua sponte* the timeliness of a state prisoner's habeas petition, so long as a petitioner is provided notice and an opportunity to show why the limitation does not bar the petition. *See Day v. McDonough*, 547 U.S. 198 (2006).

Here, the Court's preliminary review revealed that Fantuzzo admitted that his Petition was filed outside the applicable statute of limitations, but he set forth reasons why his Petition should not be time-barred. (R. 1, at 13). The Court provided the Respondent and Fantuzzo an opportunity to brief the issue of whether equitable tolling applied to toll the statute of limitations (R. 17). In addition, this Report and Recommendation provides the requisite notice and allows for objections. *See Yeager v. Hudson*, No. 3:07 cv-131, 2008 WL 818788, at *10 (N.D. Ohio Mar. 24, 2008) (noting that the petitioner received notice of the petition's untimeliness through the magistrate's report and recommendation, and had the opportunity to be heard regarding objections to the recommendation).

28 U.S.C. § 2244(d)(1)(A)-(D).  The circumstance applicable here is "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

In this case, on December 6, 2005, a Boyd County, Kentucky jury convicted Fantuzzo of attempted sodomy in the first degree and indecent exposure in the second degree.  (R. 1, at ¶ 2).  On April 14, 2006, the trial court sentenced Fantuzzo to a five-year term of imprisonment.  (*Id*.). Fantuzzo filed a direct appeal, and on October 26, 2007, the Kentucky Court of Appeals affirmed his conviction.  (R. 1, at ¶ 9(d), *Fantuzzo v. Commonwealth*, No. 2006-CA-000972, 2007 WL 3121654 (Ky. Ct. App. Oct. 26, 2007)).  On June 11, 2008, the Kentucky Supreme Court denied his request for discretionary review.  (R. 1, at ¶ 9(g)).  Fantuzzo did not seek *certiorari* in the United States Supreme Court or any further relief from the state courts.  (R. 1, at ¶¶ 9(h), 10).

If a petitioner does not seek *certiorari* in the United States Supreme Court, his judgment becomes final, for purposes of the statute of limitations under the AEDPA, in ninety days, which is when the time permitted for filing a petition for *certiorari* expires.  *Gonzalez v. Thaler,* __ U.S. __, 132 S. Ct. 641, 653-54 (Jan. 10, 2012); *see* 28 U.S.C. § 2101(d) (incorporating Rules of United States Supreme Court); Sup. Ct. R. 13(1).

Here, Fantuzzo's one-year period of limitations began to run on September 10, 2008, the ninety-first day after the Kentucky Supreme Court denied his request for discretionary review.  *Id*. Accordingly, Fantuzzo had until September 9, 2009, to timely file his federal habeas petition. Petitioner did not file his Petition, however, until September 1, 2011, almost two years after the

3

statute of limitations expired.³ Therefore, because the statute of limitations expired on September 9, 2009, the Petition is time-barred. *See Lawrence v. Florida*, 549 U.S. 327, 330-31 (2007) (noting that upon expiration of the one-year limitations period, a federal petition can no longer be considered).

### B.    Equitable Tolling

The Supreme Court has held that the statute of limitations in § 2254 cases is subject to equitable tolling in appropriate circumstances. *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2560 (2010). Equitable tolling permits a court to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robinson v. Easterling,* 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Courts grant equitable tolling "sparingly." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). The petitioner bears the burden of showing that he is entitled to equitable tolling by demonstrating: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S. Ct. at 2562; *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011).

In his Affidavit in support of his Petition, Fantuzzo asserts that after the Kentucky Supreme Court denied his Motion for Discretionary Review, his appellate counsel told him "she would pursue further legal avenues of appeal, which included filing an appeal of the Kentucky decision with the United States District Court." (R. 1-2, at ¶ 5). Fantuzzo states that he told counsel to "do whatever

---

³Fantuzzo raises four claims in his Petition, which were all raised on direct appeal to the Kentucky Court of Appeals: 1) the trial court erred in denying a motion for mistrial after a juror testified she was pressured into her vote and was told Petitioner would only get a slap on the wrist; 2) the trial court erred in failing to exclude the testimony of Sherry Keelin; 3) his rights were violated by prosecutorial misconduct, and 4) his rights were violated by commutative error. (R. 1, 1-3).

4

you need[] to do to get me into Federal Court to address this matter." (*Id*. at ¶ 6). Fantuzzo assumed she had filed a timely petition on his behalf as he instructed her to do. (*Id.* at ¶ 7). He does not allege making any further inquiry as to whether such filings were made or the status of his case until July 2011. (*Id*. at ¶ 9).

In his Reply, Fantuzzo contradicts his Affidavit and argues that he was unaware that the Kentucky Supreme Court had denied his Motion for Discretionary Appeal "for some time after the denial took place." In support of his Reply, Fantuzzo submitted the affidavit of his appellate counsel, Julia Pearson. (R. 17-1). Attorney Pearson explains that during her representation of Fantuzzo she regularly mailed documents to him and discussed the matter with him on the phone.[4] (*Id*. at ¶¶ 3- 10). On or about June 26, 2008, after the Kentucky Supreme Court denied Fantuzzo's Motion for Discretionary Review, Fantuzzo called Attorney Pearson's office and she told him a letter would be forthcoming. (*Id.* at ¶ 10). On June 26 or 28, 2008,[5] counsel prepared a letter to Fantuzzo informing him of the Kentucky Supreme Court's denial of his motion and explaining how to file a post-conviction petition in either state or federal court. (*Id.*).

Fantuzzo now asserts that he did not get this letter. Yet he does not explain why, knowing that a letter was forthcoming (*see id.* at ¶ 10), he did not notify Attorney Pearson when the letter was not timely received. According to both the Affidavits of Attorney Pearson and Fantuzzo, he did not follow-up with Attorney Pearson until sometime in 2011; three years after the letter was expected. (R. 1-2, at ¶¶ 9-13; R. 17-1, at ¶¶ 16, 25). Fantuzzo was not incarcerated during the appellate

---

[4]Fantuzzo was not incarcerated during the appellate process.

[5]Counsel's affidavit provides two dates for her letter: June 26, 2008, and June 28, 2008. (*See* R. 17-1, ¶¶ 10, 14). The clarification of this discrepancy is not vital to the adjudication of this Petition and, therefore, the Court will hereinafter refer to counsel's letter as her June 2008 letter.

5

process, and does not offer any explanation for his failure to use reasonable diligence in pursuing his case.

In her Affidavit, Attorney Pearson makes a plea on Fantuzzo's behalf, arguing that he should not be penalized for his lack of diligence in pursuing his case because his actions were reasonable. She explains that during times when he needed information and she was working on the appellate briefs, he would contact her for advice. At other times, when waiting for a court to consider the filings, he waited for her to contact him about the results and the next steps. (R. 17-1, ¶ 24). While Attorney Pearson's efforts to assist her former client are admirable, it does not change the fact that under either scenario asserted,[6] Fantuzzo has not established that he exercised reasonable diligence in protecting his rights. The Sixth Circuit has held:

> An attorney's failure to comply with professional standards of conduct may constitute an extraordinary circumstance warranting relief. *See, e.g., Holland*, 130 S. Ct. at 2562-65; *Gordon v. England*, 354 Fed. Appx. 975, 980 (6th Cir. 2009). Extraordinary circumstances may also exist when petitioners face a substantial, involuntary delay in learning about the status of their appeals. *See Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002). However, "the statute of limitations may only be tolled where the circumstances are both beyond the petitioner's control and unavoidable even with due diligence." *Dunlap*, 250 F.3d [1001, 1008 (6th Cir. 2001)]; *accord Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). Thus, Petitioner must demonstrate that he exercised reasonable diligence in protecting his appellate rights.

*Robinson*, 424 F. App'x at 442-43.

---

[6]Fantuzzo has asserted two contradictory scenarios. First, he asserts that after the Kentucky Supreme Court denied discretionary review, he timely instructed his counsel to file a petition in federal court, but she failed to do so. Second, he asserts that he did not receive counsel's June 2008 letter informing him of the Kentucky Supreme Court's decision and instructing him on how to proceed with post-conviction review, arguing he was unaware of post-conviction procedure and the applicable statute of limitations. (*Compare,* R. 1-2 and R. 17-1).

In *Robinson*, the petitioner requested updates from his attorney, but waited eighteen months between update requests. Despite these requests, the attorney failed to provide petitioner with case updates, and did not notify him of the state appellate court's decision for more than a year after the decision was issued. *Id*. The Sixth Circuit held that even assuming his attorney's failure to provide him with timely notification of the state court's decisions constituted an extraordinary circumstance, the petitioner failed to exercise reasonable diligence in pursing his rights. In so holding, the Sixth Circuit noted it "has never granted equitable tolling to a petitioner who sat on his rights for a year and a half," and it affirmed the district court's decision not to equitably toll the statute of limitations. *Id*. at 443.

Here, Fantuzzo has similarly failed to establish that he exercised reasonable diligence in pursuing his rights. Assuming Fantuzzo either did not receive counsel's June 2008 letter advising him that the Kentucky Supreme Court denied discretionary review or that he timely told counsel to file a federal petition but she failed to do so, his last contact with counsel, even under the most timeserving scenario, would have been during the June 2008 telephone call in which counsel told him she was sending him a letter. (R. 17-1, at ¶ 10). There is no evidence of any further effort by Fantuzzo either to obtain an update from his counsel or make any further inquiry about his case until July 2011, three years after their last contact. (R. 1-2, at ¶¶ 9-13, *see also* R. 17-1, at ¶ 16).

The circumstances here are no more compelling than those in *Robinson.* In fact, Fantuzzo's delay exceeds the eighteen-month delay in *Robinson*, which the Sixth Circuit found did not warrant the application of equitable tolling. As the Sixth Circuit explained, "[p]etitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'" *Robinson*, 424 F. App'x at 443 (citing *Miller*

*v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)); *see also Keeling,* 673 F.3d at 463-64 (finding three-year delay did not warrant equitable tolling as it was not a diligent monitoring of one's case). Thus, as in *Robinson*, even if "attorney misconduct and delayed notification constitute[] an extraordinary circumstance for [Fantuzzo]," he has not demonstrated that he exercised reasonable diligence in protecting his rights. *Id.*

Fantuzzo also briefly mentions in his Reply that he was, and still is, on various psychotropic medications and should not be penalized because of his mental state. (R. 17, at 2, 4). He does not, though, explain or set forth any facts to make a threshold showing that his mental condition prevented him from timely filing his Petition. The Sixth Circuit has held that mental illness will toll a statute of limitations "only if it actually prevents the sufferer from pursing his legal rights during the limitations period." *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005). Fantuzzo has not met his burden of establishing that he is entitled to equitable tolling because of his use of psychotropic medications or his mental state.

Fantuzzo further argues that he should not be penalized because of his *pro se* status and his lack of knowledge of the law. The Sixth Circuit has specifically held that neither a petitioner's *pro se* status nor his lack of knowledge of the law is sufficient to constitute an extraordinary circumstances required for equitable tolling. *Keeling*, 673 F.3d at 464.

Lastly, in his Reply, Fantuzzo requests a hearing in this matter. (R. 17-1). As this Court finds the Petition is time-barred, no evidentiary hearing is necessary. *See* Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

For the above stated reasons, the Court will recommend that the presiding District Judge find that equitable tolling is not applicable to toll the statute of limitations in this matter because Fantuzzo

did not act with sufficient diligence to warrant such an application. Nor has Fantuzzo established that his mental state constituted an extraordinary circumstance.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate of appealability may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a defendant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is further recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

9

## IV.     CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1)     the Petition for Writ of Habeas Corpus, including the request for a hearing, (R. 1, 17), be **denied;**

(2)     this case be **dismissed with prejudice** and **stricken** from the Court's docket without the necessity of requiring Respondent to file any further written response; and,

(3)     a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter.

**OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 12th day of June, 2012.



**Signed By:**
*Candace J. Smith*
**United States Magistrate Judge**